UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
ANTONIO J. POTTER,

                    Petitioner,

        -against-                        MEMORANDUM & ORDER
                                         04-CV-1343 (JS)
GARY GREEN, Superintendent,
Great Meadow Correctional Facility,

                    Respondent
------------------------------------X
APPEARANCES:
For Petitioner:      Antonio J. Potter, <u>Pro</u> <u>Se</u>
                     Great Meadow Correctional Facility
                     P.O. Box 51
                     Comstock, New York 12821

For Respondents:     Glenn Green, Esq.
                     Suffolk County District Attorney's Office
                     Criminal Courts Building
                     200 Center Drive
                     Riverhead, New York 11901


SEYBERT, District Judge:

        Petitioner, Antonio J. Potter ("Petitioner"), seeks a
writ of habeas corpus pursuant to 28 U.S.C. § 2254, with regard to
his plea of guilty to two counts of Robbery in the First Degree.
Respondent, Gary Green ("Respondent"), moves to dismiss the
Petition.  For the reasons below, Petitioner's request for a writ
of habeas corpus is DENIED and DISMISSED.

                    <u>FACTUAL BACKGROUND</u>

        In 2000, an indictment was filed in Suffolk County
charging Petitioner, Gary Morrow ("Morrow"), Kwashie Morrison
("Morrison"), and Clinton Murray ("Murray") with 65 counts of
robbery, assault, and attempted murder.  (Resp'ts Answer 4.)  The

indictment arose from a one-night crime spree that included robbery of several individuals and shooting at a vehicle occupied by three other individuals. (Id. at 5.) The Suffolk County Police Department was informed of these crimes, and was given descriptions of the vehicle and individuals involved. (Id.) Police later attempted to stop a vehicle they believed may have been involved in the crimes. (Id.) Petitioner, Morrow, Morrison, and Murray were found in the vehicle with money and guns. (Id.)

### PROCEDURAL BACKGROUND

Morrow, Morrison, and Murray all pled guilty in 2001. (Id. at 2.) Morrow pled guilty to two counts of Robbery in the First Degree and received a determinate term of incarceration of 13 years. (Id.) Morrison pled guilty to 59 counts and Murray pled guilty to three counts. (Id.). They were sentenced to determinate sentences of 22 years and 16 years, respectively.

Attorney James W. Corrigan ("Corrigan") served as Petitioner's counsel. Corrigan made several motions on Petitioner's behalf, including motions for Wade, Dunaway, and Mapp hearings. (See generally Corrigan's Notice of Mot., Petr's Ex. F.) These motions were denied because Corrigan failed to include sworn allegations of fact as required by New York Criminal Procedure Law § 710.60(1). (Trial Ct. Mem. on Corrigan's Mot., Petr's Ex. B, at 2-3.)

On March 21, 2001, Petitioner pled guilty to two counts

of Robbery in the First Degree before the County Court of the State of New York, County of Suffolk ("County Court"). (Plea Mins., Resp'ts Ex. F, at 6.) At the plea hearing, Petitioner was told that the court "would follow the People's recommendation . . . that the [D]efendant . . . receive eighteen years determinate sentence on each [count,] but they would run together." (Id. at 2-3.) The court asked Petitioner if he understood that, as a result of his guilty plea, he would be sentenced to two concurrent and determinate 18-year sentences. Petitioner answered affirmatively. (Id. at 6.)

On April 24, 2001, Petitioner was again before the County Court for sentencing. Petitioner was disruptive throughout the hearing. He made several pro se motions, continually interrupted the court, and refused to stop talking when the court asked him to. (See Sent. Mins., Resp'ts Ex. F, at 5-10.) The court refused to entertain Petitioner's motion given that he was represented by counsel. (Id. at 6.) When the court began to read Petitioner his sentence, Petitioner became more disruptive and was ordered removed from the courtroom. (Id. at 10.)

Attorney Matthew Muraskin ("Muraskin") was assigned to serve as Petitioner's appellate counsel. (Resp'ts Ans. at 2.) Muraskin perfected an appeal with the Supreme Court of the State of New York, Appellate Division, Second Department, claiming that Petitioner's guilty plea should be vacated for three reasons:

(1) the trial court failed to entertain Petitioner's pro se motions; (2) Petitioner was denied effective assistance of trial counsel; and (3) Petitioner was denied his right to be present throughout his sentencing. (See generally Petr's App. Div. Br., Resp'ts Ex. A.) The Court refused to vacate Petitioner's guilty plea. See New York v. Potter, 742 N.Y.S.2d 584 (2002). The New York State Court of Appeals denied leave to appeal. See New York v. Potter, 98 N.Y.S.2d 11 (2002).

In April 2003, pursuant to New York Criminal Procedure Law § 440.10, Petitioner filed a pro se motion with the County Court, to vacate his guilty plea. (See Petr's Notice of Mot. to Vacate J., Resp'ts Ex. C.) Petitioner claimed that the trial court failed to advise him prior to pleading guilty that a five-year mandatory period of post-release supervision would automatically attach to his sentence pursuant to New York Penal Law § 70.45(1). This motion was denied. (See Mem. Den. Petr's Mot. to Vacate J., Resp'ts Ex. E.)

In 2003, Petitioner filed a pro se coram nobis application in the Appellate Division, Second Department, of the New York State Supreme Court, claiming ineffective assistance of appellate counsel. (See Petr's Coram Nobis App., Resp'ts Ex. F.) This application was denied. See New York v. Potter, 767 N.Y.S.2d 672 (2003). The New York State Court of Appeals refused to grant leave to appeal. See New York v. Potter, 777 N.Y.S.2d 31 (2004).

4

On April 1, 2004, Petitioner filed the instant writ of habeas corpus petition claiming that his Constitutional rights were violated.

DISCUSSION

I.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court may grant a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the claim or claims presented were "adjudicated on the merits in state court proceedings" and resulted in a decision "contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" federal law when it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Desrosiers v. Phillips, No. CV-05-2941, 2006 WL 2092481, at *6 (E.D.N.Y. July 27, 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412-3, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States" limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. See Sanchez v. Keller, No.

06-CV-3370, 2007 WL 4927791, at *6 (S.D.N.Y. Dec. 4, 2007) Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653-54, 166 L. Ed. 2d 482 (2006); Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000); accord Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006).  "The 'unreasonable application' standard is independent of the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application" of federal law.  Sanchez, 2007 WL 4927791 at *6 (citing Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (citing Williams, 529 U.S. at 411)).  A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case.  Id.

II.  Petitioner's Claims

Petitioner's request for habeas relief rests on five separate claims: (1) the state court's failure to inform Petitioner of a mandatory post-release supervision period that automatically attached to his sentence rendered his plea involuntary; (2) the state court violated Petitioner's Sixth Amendment right to self-representation when it denied his pro se trial motions; (3) the state court's removal of Petitioner from the courtroom during sentencing violated his Sixth Amendment right to be present; (4) Petitioner was denied effective assistance of trial counsel; and (5) Petitioner was denied effective assistance of appellate

6

counsel.  (See Pet. at 12.)

> A.  Petitioner's Plea was Constitutionally Valid
>     Notwithstanding the State Court's Error when it
>     Failed to Inform Petitioner of the Post-Release
>     Supervision Period.

Petitioner first claims that the state court's failure to advise him of a mandatory five years post-release supervision ("PRS") rendered his guilty plea involuntary and was, therefore, constitutionally defective.  See N.Y. Penal Law § 70.45(1) (requiring an additional period of post-release supervision to be added to each determinate sentence).  For the reasons that follow, Petitioner is not entitled to relief on this basis.  Review of the record indeed indicates that, prior to pleading guilty, Petitioner was never informed that Section 70.45 of the New York Penal Law automatically imposes a period of PRS.[1]

---

[1] When Petitioner appeared at his plea hearing before the County Court, Petitioner was informed by the court that in exchange for his guilty plea, Petitioner would "receive eighteen years determinate sentence . . . [with] no more additional time than the eighteen."  (Plea Mins., Resp'ts Ex. F, at 3; 1-11.) The Court repeated this sentence and asked Petitioner if he understood.  (Id. at 10; 15-25.)  Petitioner affirmatively responded.

A month after pleading guilty, Petitioner again appeared before the County Court for sentencing.  Again, the court did not mention the PRS imposed by New York Penal Law § 70.45:

> [Petitioner] appeared before the court on
> March 21, 2001, entered a plea of guilty to
> count one and count 57 in the indictment;
> both of those counts being robbery, violent B
> felonies.
>     As a result of . . . [Petitioner's] plea
> and the promise of the Court . . . [the
> judge] told him . . . [that the court] would
> sentence him to 18 years determinate on each,

A guilty plea is "a grave and solemn act to be accepted only with care and discernment." <u>Brady v. United States</u>, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); <u>United States v. Adams</u>, 448 F.3d 492, 497 (2d Cir. 2006) (<u>quoting</u> <u>United States v. Arteca</u>, 411 F.3d 315, 319 (2d Cir. 2005) ("'[a] guilty plea is no mere formality, but a grave and solemn act."). It is more than "a confession which admits that the accused did various acts; it is itself a conviction." <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); <u>see</u> <u>Adams</u>, 448 F.3d at 497 (holding that a guilty plea is a "grave and solemn act" because it "waives important rights . . . ."). The Supreme Court has long held that Due Process requires a guilty plea to be "voluntary

---

concurrent with each other.

(Sent. Mins., Resp'ts Ex. F, at 5; 4-13.) Moreover, the record indicates that, at the time he pled guilty, Petitioner was unaware of any mandatory PRS. (<u>See</u> <u>id.</u> at 8; 13-9 (to "give 18 years is too much, your [h]onor, especially for two robberies"); <u>see</u> <u>also</u> <u>id.</u> at 9; 16-20 ("D.A. forcing me things I don't want to do . . . I can't do 18 years. I'm 21 years. That's old age.")) The Court then sentenced Petitioner to 18 years. (<u>See</u> <u>id.</u> at 10; 7-8.)

Thomas J. Spota, the Suffolk County District Attorney acknowledged that the County Court failed to disclose to Petitioner that he would be subject to mandatory PRS: "[t]he People acknowledge that the plea minutes reflect that the Court never advised [D]efendant that his sentence would include a component of post-release supervision." (Resp'ts Opp's to Petr's New York C.P.L. 440.10 Mot., Resp'ts Ex. D at 3; ¶ 10.) Judge Louis J. Ohlig, who accepted Petitioner's plea and sentenced him acknowledged the same: "it is apparent that the . . . [Petitioner] was not informed of the requirement for post-release supervision at the time of his guilty plea . . . ." (Mem. Den. Petr's Mot. to Vacate J., Resp'ts Ex. E., at 2.)

. . . [and a] knowing [and] intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." Brady, 397 U.S. at 748; Adams, 448 F.3d at 497 (quoting Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S. Ct. 2398, 162 L. Ed. 143 (2005) (holding that a plea "'is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences.'")).

A guilty plea is intelligent when the defendant "was advised by competent counsel[,] . . . was made aware of the nature of the charge against him, and there was nothing to indicate that [the defendant] was incompetent or otherwise not in control of his mental faculties . . . ." Brady, 397 U.S. at 756. A voluntary plea, on the other hand, is

> entered by one fully aware of the <u>direct</u> <u>consequences</u>, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, [and] must stand unless induced by threats, misrepresentation, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.

Id. at 755 (quoting Shelton v. United States, 242 F.2d 101, 115 (5th Cir. 1957) (emphasis added)).

The voluntariness of a plea, however, is but one element this Court must consider when assessing the constitutionality of that plea. See Jones v. United States, 440 F.2d 466, 468 (1971) (holding that a finding of involuntariness does not require an

automatic vacatur of the guilty plea); see also Caputo v. Henderson, 541 F.2d 979, 984 (2d Cir. 1976) ("automatic vacatur does not follow [a finding of involuntariness] as a matter of constitutional law."). If the Court determines that the petitioner was unaware of direct consequences of his plea--and, therefore, that his plea was involuntary--it must next determine whether Petitioner's lack of knowledge of the plea's consequences "made any difference in his decision to enter [the] plea." Hunter v. Fogg, 616 F.2d 55, 58 (2d Cir. 1980) (quoting Caputo, 541 F.2d at 984). If not, the plea, although involuntary on its face, was constitutionally valid. See Kelleher v. Henderson, 531 F.2d 78, 82 (2d Cir. 1976) (holding that, although he was not informed of the maximum sentence that he faced, the defendant's guilty plea was constitutionally valid because defendant would not have pled differently had he been informed of the maximum sentence); Nunez v. Costello, No. 93-CV-5282, 1994 WL 719686, at *3 (S.D.N.Y. Dec. 28, 1994) (holding that a defendant's misinformation about a guilty plea's consequences did not invalidate the plea because, even if the information had been provided to him, defendant would have chosen to accept the plea offered).

      1.   <u>The Supreme Courth has Never held that Mandatory PRS is a Direct Consequence of One's Conviction; therefore, the Trial Court's Failure to Inform Petitioner of his Mandatory PRS Cannot be a Violation of Clearly Established Federal Law.</u>

The first question before this Court is whether a

defendant who is pleading guilty must be apprised of the PRS mandated by New York Penal Code § 70.45 prior to entering the plea. If so, a failure to do so may violate "due process and [may render the plea] . . . void." <u>Boykin</u>, 395 U.S. at 243; <u>see</u> <u>Ferguson v. United States</u>, 513 F.2d 1011, 1013 (2d Cir. 1975) (holding that "where the transcript or other record of the sentencing proceeding fails to disclose that the judge informed a defendant of the consequences of his plea, the defendant must be permitted to replead").

To remain within the confines of the Due Process Clause, a state court need only apprise an individual entering a guilty plea of the plea's direct consequences: "[c]ertain possible consequences of a guilty plea are collateral and 'need not be explained to the defendant in order to ensure that the plea is voluntary.'" <u>United States v. Salerno</u>, 66 F.3d 544, 550 (2d Cir. 1995) (<u>quoting</u> <u>United States v. U.S. Currency</u>, 895 F.2d 908, 915 (2d Cir. 1990)); <u>see also</u> <u>Michel v. United States</u>, 507 F.2d 461, 466 (1974) (holding that the accused "need not be informed prior to the acceptance of his guilty plea about every conceivable collateral effect the conviction entered on the plea might have") (internal citations omitted). The distinction between a direct and a collateral effect "is obvious at the extremes and often subtle in the margins." <u>United States v. Russell</u>, 686 F.2d 35, 38 (D.C. Cir. 1982).

On one hand, a direct consequence has a "definite, immediate, and largely automatic effect on the range of the defendant's punishment." <u>Currency</u>, 895 F.2d at 915 (<u>quoting</u> <u>George v. Black</u>, 732 F.2d 1364, 1366 (4th Cir. 1973)). Put simply, the defendant's conviction must be a "necessary . . . [or] sufficient condition precedent" to make a consequence direct. <u>Id.</u> at 916. Conversely, a collateral consequence <u>might</u> result from a guilty plea. <u>See</u> <u>Cuthrell v. Director, Patuxent Inst.</u>, 475 F.2d 1364, 1365 (4th Cir. 1973) (holding that "the fact that the acceptance of [P]etitioner's plea of guilty . . . placed him in a class, where he <u>might</u>, as a result of an entirely separate civil proceeding . . . be committed to . . . [an] [i]nstitution . . . was a collateral consequence of his plea") (emphasis added). Examples of collateral consequences include possible deportation resulting from a separate civil proceeding; the determination that a sentence is concurrent or consecutive with another being served; enhancement of a defendant's state court sentence because of a federal court conviction; the determination of parole status; undesirable military discharge; potential civil liability; or the potential usage of the guilty plea in subsequent and separate charges. <u>See</u> <u>id.</u> at 915 (internal citations omitted).

On the other hand, direct consequences, include the lack of the possibility of parole for the particular offense for which the defendant is pleading guilty, <u>Cuthrell</u>, 475 F.2d at 1366, the

12

use of the defendant's factual admissions during a plea allocution at a subsequent trial arising out of the same transaction, <u>New York v. Latham</u>, 652 N.Y.S.2d 328 (App. Div. 1996), and the addition of time to a regular sentence through a special parole term. <u>Michel</u>, 507 F.2d at 462.

New York Penal Law § 70.45(1) states, in part, that each "determinate sentence" imposed by a New York state court "includes . . . an additional period of post-release supervision." This supervision "shall commence upon the person's release from imprisonment." <u>Id.</u> at § 70.45(5)(a). The statute requires the board of parole to "impose conditions of post-release supervision in the same manner and to the same extent as it may establish and impose conditions in accordance with the executive law upon persons who are granted parole or conditional release." <u>Id.</u> at § 70.45(3). Such conditions include admission into a residential treatment facility and other restrictions on a person's conduct. <u>Id.</u> A violation of one or more of the conditions "shall subject the defendant to a further period of imprisonment up to the balance of the remaining period of post-release supervision, not to exceed five years." <u>Id.</u> at § 70.45(1). Although the added time is not necessarily a period of incarceration, it nonetheless serves as an imposition or restriction on the defendant's life and liberties. Thus, by operation of Section 70.45, a defendant sentenced to ten years imprisonment is <u>automatically</u> ordered to submit to the

supervision of the state for a period beyond the initial ten years.

In other words, the imposition of a period of PRS under Section

70.45 results directly from a defendant's conviction, through

either a guilty plea or by a jury.  Absent a conviction, the

supervision would not exist.  <u>See</u> <u>Currency</u>, 895 F.2d 915 (<u>quoting</u>

<u>George</u>, 732 F.2d at 1366) (holding that the PRS imposed by Section

70.45 is not something that <u>might</u> follow; rather it is "definite

[and] immediate" and has an "automatic effect" on a defendant's

sentence).

Recently, in <u>New York v. Catu</u>, 4 N.Y.3d 242, 245, 792

N.Y.S.2d 887 (2005), the New York Court of Appeals addressed the

issue of whether a mandatory PRS constitutes a direct or indirect

consequence of conviction.  The court wrote that

> [b]ecause a defendant pleading guilty to a
> determinate sentence must be aware of the
> postrelease supervision component of that
> sentence in order to knowingly, voluntarily
> and intelligently choose among alternative
> courses of action, the failure of a court to
> advise of postrelease supervision requires
> reversal of the conviction.  The refusal of
> the trial court and Appellate Division to
> vacate defendant's plea on the ground that he
> did not establish that he would have declined
> to plead guilty had he known of the post
> release supervision was therefore error (<u>see
> also</u> <u>New York v. Coles</u>, 62 N.Y.2d 908, 910,
> 479 N.Y.S.2d 1, 467 N.E.2d 885 [1984]
> ["harmless error rules were designed to review
> trial verdicts and are difficult to apply to
> guilty pleas"] ).

<u>Id.</u>  Thus, New York now regards mandatory post-release supervision

as a direct consequence, and a state judge must advise the

defendant of it before defendant can accept a guilty plea.  But while persuasive, <u>Catu</u> is not controlling in a federal habeas proceeding.

A district court may grant a petition for habeas corpus if the petitioner's custody violates the Constitution or laws of the United States "as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  In <u>Marshall v. Lonberger</u>, the Supreme Court stated

> [T]he governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law . . . and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d).

459 U.S. 422, 431, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983), (<u>citing</u> <u>Henderson v. Morgan</u>, 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976) and <u>Boykin v. Alabama</u>, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)).  Unfortunately, as indicated by several other district courts in this Circuit, there is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS before accepting a guilty plea.  <u>See</u> <u>Jenkins v. Farrell</u>, No. 07-CV-6937, 2009 WL 1616008, at *9 (S.D.N.Y. June 9, 2009); <u>Sanchez v. Keller</u>, No. 06-CV-3370, 2007 WL 4927791, at *7 (S.D.N.Y. Dec. 4, 2007); <u>Menjivar v. Sears</u>, No. 06-CV-2854, 2007 WL 2274892, at *3 (E.D.N.Y. Aug. 7, 2007); <u>Shabazz v. Perlman</u>, No. 04-CV-4355, 2005 WL 2105533, at *5-7 (S.D.N.Y. Sept. 1, 2005).  The "Supreme Court has also held that if it has never

addressed a specific claim, 'it cannot be said that the state court unreasonably applied clearly established Federal law' on that particular issue." <u>Sanchez</u>, 2007 WL 4927791 at *7 (<u>quoting</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 127 S. Ct. 649, 653-54, 166 L. Ed. 2d 482 (2006) (internal citation omitted)). When analyzing whether the Supreme Court has ever addressed a specific issue, its holdings must be read narrowly, without considering dicta. <u>Id.</u> (<u>citing Carey</u>, 127 S. Ct. at 653); <u>see also</u> <u>Rodriquez v. Miller</u>, 499 F.3d 136, 137 (2d Cir. 2007) (reversing its earlier grant of habeas relief in light of <u>Carey</u>, "which admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.").[2]

Accordingly, this Court holds that Petitioner's plea was voluntary; there is no clearly established Supreme Court precedent holding that mandatory PRS is a direct consequence of Petitioner's

---

[2] Such a reading is in direct conflict with the court in <u>Bonner v. Ercole</u>, in which the United States District Court for the Northern District of New York held that mandatory PRS was a direct consequence of a conviction, and that "[b]ecause the Trial Court failed to advise Bonner of the fact that upon entry and acceptance of his guilty plea he would be subject to a five-year mandatory term of post-release supervision, . . . the decision of the Appellate Division, Third Department, was contrary to established law as determined by the Supreme Court of the United States." No. 07-CV-0399, 2008 WL 4031983, at *3 (N.D.N.Y. Aug. 25, 2008). This Court believes that, in light of the Court's duty to construe Supreme Court habeas precedent narrowly, the reasoning outlined in <u>Shabazz</u>, <u>Sanchez</u>, <u>Jenkins</u>, and <u>Menjivar</u> is the proper interpretation.

conviction.  Petitioner is not entitled to relief on this basis.

2.    The State Court's Error had no Effect on
Petitioner's Decision to Plead Guilty.

Although the Court's inquiry can stop at its determination that the state court did not unreasonably apply clearly established Federal law, the Court also finds that, even had the application been unreasonable, the state court's failure to inform Petitioner of the PRS period did not "make any difference in . . . [Petitioner's] decision to enter [the] plea." Hunter, 616 F.2d at 58 (quoting Caputo, 541 F.2d at 984).  Absent a difference, Petitioner's plea, albeit involuntary, was constitutionally valid.

The state court record contains a finding of fact establishing that Petitioner's lack of information did not impact his decision to plead guilty:

> Although . . . [Petitioner] now claims that he would not have pleaded guilty had he been advised of post-release supervision prior to his plea, based on the facts and circumstances of this case, not only is the sincerity of such contention seriously questioned but in the opinion of the Court, his assertion has been conclusively refuted as a matter of law . . . the Court seriously doubts that . . . [Petitioner] would have been truly concerned about any period of post-release supervision.

(Mem. Den. Petr's Mot. to Vacate J., Resp'ts Ex. E.)  Under AEDPA, "a state court's factual findings are afforded great deference, unless there is clear evidence to the contrary." Sanchez, 2007 WL 4927791 at *9 (citing Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied, 540 U.S. 1091, 124 S. Ct. 962, 157 L. Ed. 2d

17

798 (2003); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) (<u>quoting</u> <u>Sumner v. Mata</u>, 455 U.S. 591, 598, 102 S. Ct. 1303, 71 L. Ed. 2d 480 (1982)); <u>see</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus . . . a determination of a factual issue made by a [s]tate court shall be presumed to be correct."). This Court cannot simply "disagree with the state court . . . it must conclude that the state court's finding lacked even fair support in the record." <u>Marshall</u>, 459 U.S. at 432. The burden is on Petitioner to rebut by clear and convincing evidence the presumed correctness and to overcome the high measure of deference given to the state court's finding of fact. <u>See</u> 42 U.S.C. § 2254(e)(1).

Petitioner's only evidence attempting to overcome the state court's finding is his own statement: "[h]ad [P]etitioner been informed by the court that PRS would be a part of his sentence, [P]etitioner would not have entered a guilty plea." (Pet. at 6.) This statement, without more, coupled with the fact that Petitioner potentially faced a sentence that could have exceeded 50 years, as opposed to the 18 years he received as a result of his plea, does not overcome the presumed correctness of the state court's finding. <u>See</u> <u>Sanchez</u>, 2007 WL 4927791 at *8. ("Irrespective of whether the trial court improperly failed to inform him of the PRS requirement, Petitioner provides no evidence that he would not have accepted the plea agreement had he known

about the PRS."); see also Steele v. Filion, 377 F. Supp. 2d 332, 336 (W.D.N.Y. 2005) ("With respect to Steele's claim that his plea was involuntary because the court failed to inform him that a period of post-release supervision was going to accompany the sentences imposed, I agree that the better practice would have been for the court to have advised Steele of this fact. However, Steele has not shown that knowledge of the post-release component of the sentence would have affected his decision to plead guilty.").

Thus, as in Sanchez, "Petitioner's claim--that the failure to inform him of mandatory PRS prior to the entry of his guilty plea was a violation of his due process rights--can be dismissed as harmless error, because even if he had know about the PRS, such knowledge would likely not have affected his decision." 2007 WL 4927791 at *9.

Accordingly, the Court finds as follows: (1) The state court's failure to inform Petitioner did not "make any difference in . . . [Petitioner's] decision to enter a plea." Hunter, 616 F.2d at 58 (quoting Caputo, 541 F.2d at 984); and (2) Petitioner's guilty plea was constitutionally valid. Therefore, Petitioner's request for habeas relief due to the state court's failure to inform him of the mandatory PRS is DENIED.

B.   The State Court's Removal of Petitioner from the Courtroom During Sentencing was Within the State Court's Broad Discretion Established by the Supreme Court.

Petitioner next claims that he was denied his Sixth and

19

Fourteenth Amendment rights to be present at his sentencing proceeding. Throughout his sentencing, Petitioner was disruptive. He would not stop speaking loudly, kept making motions, and continually disrupted the sentencing judge. (See Sent. Mins., Resp'ts Ex F.) Even after the judge told Petitioner to stop, Petitioner continued to interrupt the sentencing proceeding until he had an "outburst" in which his "demeanor became very, very disruptive." (Id. at 10.) At this point, the sentencing judge rang the court alarm and twelve court officers were called into the courtroom to restore order and remove Petitioner. (Id.) The sentencing judge's decision to remove Petitioner from the courtroom was not "contrary to . . . or . . . an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d)(1). Thus, Petitioner's request for habeas relief on this claim is DENIED.

The Supreme Court has long recognized that a defendant has the privilege "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Comm. of Massachusetts, 291 U.S. 97, 105, 54 S. Ct. 330, 78 L. Ed. 674 (1934); see also Faretta v. California, 422 U.S. 806, 820, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (holding that a criminal defendant has the right to be "present at all stages of the trial"). This privilege permits defendants to be present at not

only the actual trial, but at proceedings that precede or occur after the trial. <u>See</u> <u>Snyder</u>, 291 U.S. at 106-7 (noting that a defendant has a right to be present during <u>voir</u> <u>dire</u>, summations, as well as certain pre- and post-trial motion hearings); <u>see</u> <u>also</u> <u>Dixon v. Miller</u>, 56 F. Supp. 2d 289, 300-01 (E.D.N.Y. 1999) (extending the right to be present to the sentencing stage). This right, however, is not absolute. <u>See</u> <u>Illinois v. Allen</u>, 397 U.S. 337, 342, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (refusing to hold that "a trial judge could never expel a defendant from his own trial"). For example, the privilege of presence does not necessarily extend "when presence would be useless, or [when] the benefit [is] but a shadow." <u>Snyder</u>, 291 U.S. at 106-7. Also, it "may be lost by consent or at times even by misconduct." <u>Id.</u> at 107; <u>see</u> <u>also</u> <u>Gilchrist v. O'Keefe</u>, 260 F.3d 87, 97 (2d Cir. 2001) (holding that a "defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct").

In <u>Allen</u>, the Supreme Court discussed a defendant's loss of the right to be present at trial because of misconduct. 397 U.S. at 337. There, an Illinois defendant was arguing with a trial judge "in a most abusive and disrespectful manner," threw papers on the floor, and tore a file belonging to his attorney. <u>Id.</u> at 340. The trial judge then removed the defendant from the courtroom. The Supreme Court held that when "trial judges [are] confronted with

disruptive, contumacious, [and] stubbornly defiant defendants, [the judge] must be given sufficient discretion to meet the circumstances of each case." Id. at 343. While the Supreme Court recognized that "[n]o one formula for maintaining appropriate courtroom atmosphere will be best in all situations," it did acknowledge three constitutionally permissible ways for a trial judge to deal with such a situation: (1) bind and gag the defendant; (2) cite the defendant for contempt; or (3) take the defendant out of the courtroom until he promises to conduct himself properly. Id. at 343-4. The Supreme Court noted that a trial judge should warn the defendant before removing him from the courtroom; however, the Court clearly placed the discretion of whether to warn a defendant and how to subdue a disruptive defendant with the judge. Id. at 343; see also Norde v. Keane, 294 F.3d 401, 413 (2d Cir. 2001) (holding that a trial judge has "broad discretion" when dealing with a disruptive defendant, including removing the defendant without a warning); Gilchrist, 260 F.3d at 97 (holding that a defendant may forfeit certain trial rights "even absent a warning"). Thus, if a trial judge believes that a warning is not necessary or will be ignored, it is within the broad discretion of the judge to remove the defendant without such a warning.

The sentencing minutes in the instant case indicate that the judge was well within his broad discretion in removing

Petitioner from the courtroom. From the onset of the hearing, Petitioner was disruptive. After asking to be heard, Petitioner would not stop speaking and, each time the judge began to speak, Petitioner would interrupt. (See Sent. Mins., Resp'ts Ex. F.) Petitioner kept questioning the judge, demanding a new attorney, and requested to withdraw his guilty plea several times. (Id. at 6, 7, 9-10.)

After the judge told Petitioner to stop and began to read Petitioner's final sentence, the record indicates that the Petitioner had an "outburst" and that his "demeanor became very, very disruptive." (Id. at 10.) Petitioner was so disruptive that the judge was forced to ring the alarm and twelve court officers responded to subdue Petitioner and remove him from the courtroom. (Id.)

In Norde, the Second Circuit held that a trial judge was well within his broad discretion when removing a defendant whose actions were similar to Petitioner's. 294 F.3d at 413. There, the defendant was constantly disrupting the trial by demanding a new attorney, interrupting the judge, speaking loudly and without permission, and kept making unwarranted and loud objections. Id. Although the Second Circuit recognized that the defendant's conduct was not as "egregious" as the conduct the Supreme Court reviewed in Allen, the Circuit nonetheless found that the conduct was disruptive enough to warrant the defendant's removal. Norde, 294

F.3d at 413.

The record in the instant case demonstrates that Petitioner's conduct was more egregious than the conduct in <u>Norde</u>. While the defendant in <u>Norde</u> was quietly removed, Petitioner's conduct necessitated an alarm and the assistance of twelve officers to remove him from and restore calm in the courtroom. (Sent. Mins., Resp'ts Ex. F, at 10; 10-6.) Petitioner's misconduct served as a waiver of his right to be present at his sentencing proceeding. The state court's removal of Petitioner was within the limits established by the Supreme Court. <u>See</u> <u>Allen</u>, 397 U.S. at 343-44 (holding that when "trial judges [are] confronted with disruptive, contumacious, [and] stubbornly defiant defendants[, the judge has] . . . discretion to meet the circumstances of each case," including removing the defendant from the courtroom). Given this standard, the state court's actions were not an unreasonable application of federal law. <u>See</u> 28 U.S.C. 2254(d)(1) (a habeas petition is granted when a "claim that was adjudicated on the merits in state court proceedings . . . resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States"). Petitioner's request for habeas relief due to the state court's decision to remove him from the courtroom is therefore DENIED.

C.  The State Court's Denial of Petitioner's Pro Se Motions
did not Violate Petitioner's Due Process Rights.

Petitioner next claims that the state court's denial of
his pro se motions because Petitioner was represented by an
attorney violated his Sixth Amendment right.   While the state
court's record does not indicate the substance of the motions
Petitioner made, it does show that the state court's refusal to
entertain said motions was because Petitioner was represented by an
attorney: "[a]s far as your motion, you were making a motion on
your own; and you had an attorney to make motions." (Sent. Mins.,
Resp'ts Ex. F, at 6; 15-25.)   The state court's refusal to
entertain Petitioner's pro se motions because Petitioner was
represented by an attorney is neither contrary to nor an
unreasonable application of federal law as interpreted by the
Supreme Court.   Petitioner's request for habeas relief for this
claim is therefore DENIED.

Respondent argues that Petitioner failed to state a
federal constitutional claim upon which this Court may grant habeas
relief.   While Petitioner does not directly assert a constitutional
issue, this Court recognizes Petitioner's pro se status and finds
that the instant claim raises a Sixth Amendment, right to self-
representation, challenge to the state court's refusal to entertain
Petitioner's pro se motions.   See Haines v. Kerner, 404 U.S. 519,
520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) ("allegations of . . .
[a] pro se complaint . . . [are held] to less stringent standards

25

than formal pleadings drafted by lawyers . . . .").  The Court will
now reach the merits of this claim.

The Supreme Court has long recognized a criminal
defendant's Sixth Amendment right to a full defense.  <u>Faretta</u>, 422
U.S. at 818.  A defendant must "be informed of the nature and cause
of the accusation[,] . . . be confronted with the witnesses against
him[,] . . . have [a] compulsory process for obtaining witnesses in
his favor, and to have the [a]ssistance of [c]ounsel for his
defense."  <u>Id.</u>  While the Sixth Amendment affords criminal
defendant's the right to counsel, it also "implies a right to self-
representation."  <u>Id.</u> at 821.  If the defendant decides against
self-representation and "chooses to have a lawyer manage and
present his case, law and tradition may allocate to the counsel the
power to make binding decisions of trial strategy in many areas."
<u>Id.</u> at 820.  If a defendant decides to represent himself, the state
court may appoint stand-by counsel to assist the defendant.  <u>Id.</u> at
834 (<u>citing</u> <u>United States v. Dougherty</u>, 473 F.2d 1113, 1124-26
(D.C. Cir. 1972).  The Supreme Court has held, however, that a
state court is not "require[d] . . . to permit 'hybrid
representation.'"  <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 183, 104 S.
Ct. 944, 79 L. Ed. 2d 122 (1984).  Thus, absent a defendant's
invocation of his right to self-represent, a defendant is "not
entitled to have his <u>pro</u> <u>se</u> motions entertained by the court
alongside those of counsel."  <u>Delgado v. Duncan</u>, No. 02-CV-4929,

2003 WL 23185682, at *5 (E.D.N.Y. Nov. 4, 2003); see also Jones v. Barnes, 463 U.S. 745, 754, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (holding that the Constitution does not require state courts to "second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every . . . claim suggested by a client"); New York v. Rodriquez, 719 N.Y.S.2d 208, 209 (2000) (holding that where a criminal defendant is represented by counsel, he "is not entitled to hybrid representation . . . and . . . the decision to entertain such [pro se] motions lies within the sound discretion of the trial court").

In the instant case, the state court refused to entertain Petitioner's unspecified pro se motions because he was represented by an attorney. (See Sent. Mins., Resp'ts Ex. F, at 6; 15-25.) This decision is well within the Supreme Court's interpretation of federal law. Accordingly, Petitioner's request for habeas relief on this claim is DENIED. See 28 U.S.C. 2254(d)(1) (habeas relief is appropriate when a state court decision was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States").

D.   Petitioner was not Denied Effective Assistance of Counsel

Petitioner next claims that he was denied effective assistance of trial and appellate counsel. Both claims are DENIED as the trial and appellate assistance provided Petitioner were within the standards adopted by the Supreme Court.

27

The Sixth Amendment guarantees a right to counsel. See Strickland v. Washington, 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (holding that "the Sixth Amendment right to counsel exists, and is needed in order to protect the fundamental right to a fair trial"). This right to counsel, the Supreme Court has held, "is the right to effective assistance of [such] counsel". Id. at 685. Thus, when a state court "interferes in certain ways with the ability of counsel to make independent decision about how to conduct the defense," the court commits Constitutional error. Id. at 686.

Counsel may also deprive a defendant of this right by "failing to render 'adequate legal assistance.'" Id. (quoting Cuylrt v. Sullivan, 446 U.S. 335, 344, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). To determine whether counsel was adequate, a petitioner must establish by a preponderance of the credible evidence that (1) counsel's representation "fell below an objective standard of reasonableness . . . under prevailing professional norms," and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694 (see also Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (holding that the two part test "applies to challenges to guilty pleas based on ineffective assistance of counsel")). A reasonable probability "is a probability sufficient to undermine confidence in

28

the outcome." Id. at 694.

The Supreme Court demands a "strong presumption that [trial] counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Given this, Petitioner must show that counsel's errors were "so serious" that he was deprived "of a fair trial, a trial whose result is reliable" and that counsel was "not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687.

To meet the two-prong Strickland test, Petitioner must first identify the acts or omissions that are "alleged not to have been the result of reasonable professional judgment." Id. at 689. This Court must then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," with the strong presumption that counsel met this burden. Id. Petitioner must next show that there is a reasonable probability that "but for" counsel's error, the outcome of the case would have been different. Id. at 694; see also Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (holding that "[w]here a defendant challenges his conviction, he must show that there exists a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt") (internal citations omitted).

When determining whether a petitioner has met the two-

prong <u>Strickland</u> test, this Court need not follow any order. <u>Id.</u>
at 697. Rather, this Court may address the second element before
the first. <u>Id.</u> Moreover, if one element is not met, this Court
may dismiss the ineffective assistance of trial counsel claim
without reaching the other element. <u>Id.</u> However, a review of
counsel's acts and/or omissions that predicate Petitioner's
ineffective assistance of counsel claim must be viewed in their
totality "from counsel's perspective at the time" counsel made the
decision being questioned. <u>Id.</u> at 689.

This Sixth Amendment right to effective assistance of
counsel also extends to an indigent defendant's first appeal.
<u>Barnes</u>, 463 U.S. at 751. The two-prong <u>Strickland</u> test is used to
determine whether appellate counsel was in-fact effective. <u>Claudio
v. Scully</u>, 982 F.2d 798, 803 (2d Cir. 1992) (<u>citing</u> <u>Abdurrahman v.
Henderson</u>, 897 F.2d 71, 74 (2d Cir. 1990) (holding that "the
<u>Strickland</u> two-prong test [must be used] in assessing the
effectiveness of appellate counsel")). Thus, Petitioner must show
that (1) his appellate counsel's representation "fell below an
objective standard of reasonableness . . . under prevailing
professional norms" and (2) that there is a "reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." <u>Strickland</u>, 466 at 688,
694.

1. <u>Petitioner was not Denied Effective Assistance of Trial Counsel</u>

Petitioner's ineffective trial counsel claim rests on three arguments: (1) trial counsel failed to include sworn allegations of facts when filing a suppression motion in state court; (2) trial counsel provided no assistance to Petitioner when Petitioner attempted to withdraw his guilty plea; and (3) trial counsel failed to advise Petitioner that Petitioner's sentence would include a mandatory five-year period of post-release supervision. (Pet. 13-4.) Petitioner fails to meet the two-prong <u>Strickland</u> test for each of these three contentions. Accordingly, Petitioner's request for habeas relief due to ineffective assistance of trial counsel is DENIED.

Petitioner first argues that his counsel's failure to include a sworn allegation of facts when filing a suppression motion in state court fell below an objective standard of reasonableness under the prevailing norms of practicing attorneys and that "but for" counsel's inaction, there was a reasonable probability that the proceeding would have resulted in a different outcome.

New York Criminal Procedure Law § 710.60(1) requires suppression motions to include a sworn allegation of facts. Petitioner's counsel failed to include the sworn allegation of facts. The record indicates that the state court denied a motion by Petitioner's counsel for <u>Wade</u>, <u>Dunaway</u>, and <u>Mapp</u> hearings

because of counsel's failure to include a sworn allegations of facts pursuant to New York Criminal Procedure Law § 710.60(1). (See State Ct. Mem. on Resp'ts Pre-Trial Mot., Petr's Ex. B; 2-3 (holding that "Defendant's moving papers fail to contain sworn allegations of fact in support of such relief and, as a result, it is the determination of this Court that such insufficiency requires denial of this portion of the Defendant's omnibus motion in all respects.)) However, the

> government is not responsible for, and hence
> not able to prevent, attorney errors that will
> result in reversal of a conviction or
> sentence. Attorney errors come in an infinite
> variety and are as likely to be utterly
> harmless in a particular case as they are to
> be prejudicial . . . . [Thus,] [e]ven if a
> defendant shows that particular errors of
> counsel were unreasonable . . . defendant must
> show that they actually had an adverse effect
> on the defense.

Hill, 474 U.S. at 58 (quoting Strickland, 466 U.S. at 693).

While counsel's failure to include a sworn allegation of facts is unprofessional and may be unreasonable, Petitioner has failed to demonstrate that "but for" counsel's error, the result of the proceeding would differ. Petitioner makes several unsupported allegations as to what may have been produced had counsel not erred and indicates possible discrepancies in the arresting agency's case. Moreover, Petitioner notes that the hearings that counsel's motion may have produced, could have possibly established that the police stop that led to Petitioner's arrest may have been done

without probable cause. These allegations and possibilities are insufficient as Petitioner must establish that "counsel's error actually had an adverse effect on the defense." <u>Hill</u>, 474 U.S. at 58 (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 693). Petitioner fails to do so. Absent a showing of such an effect, Petitioner's first underlying ineffective assistance of trial counsel point is DENIED.

Petitioner next claims that trial counsel failed to argue Petitioner's motion to withdraw his guilty plea. In <u>Barnes</u>, the Supreme Court held that a defendant does not have a "constitutional right to compel . . . counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." 463 U.S. at 751. Petitioner does not show that his counsel's refusal to argue Petitioner's motion to withdraw his guilty plea lacked professional judgment. In fact, the record indicates a contrary notion. At Petitioner's plea hearing, the trial judge briefly discussed the benefits of the negotiated plea, noting that counsel worked hard in securing Petitioner a favorable sentence: "[h]ad this case gone to trial, there would have been sixty-five separate incidents that the jury would have to consider. If you were convicted, you certainly would have faced the rest of your life in prison . . . ." (Sent. Mins., Resp't's Ex. F, at 15-6.)

Giving the favorable sentencing secured by Petitioner's counsel coupled by Petitioner's failure to show that his counsel's

refusal to argue Petitioner's motion to withdraw his guilty plea lacked professional judgment, Petitioner has not evidenced that counsel's omission "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 688. Indeed, had counsel argued Petitioner's motion, Petitioner's guilty plea would have been withdrawn and the case would have been sent to trial. Nonetheless, Petitioner's failure to show that his counsel's omission fell below an objective standard of reasonableness is sufficient to DISMISS Petitioner's second ineffective assistance of trial counsel claim without reaching Strickland's second prong. See id. at 697 (holding that if one of the two Strickland elements is not met, a court may dismiss the ineffective assistance of trial counsel claim without reaching the other element).

Petitioner next contends that counsel failed to inform him that his sentence automatically includes a period of five-years PRS. See N.Y. Penal Law § 70.45(1). Petitioner claims that counsel's failure evidences representation that "fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "but for" counsel's error, there is a "reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694; see also Hill, 474 U.S. at 58 (holding that the two part test "applies to challenges to guilty pleas based on ineffective assistance of

counsel").

        The Sixth Amendment right to effective assistance of counsel "attaches at all critical stages . . . including plea negotiations. United States v. Gordon, 156 F.3d 376, 379 (2d Cir. 1998) (citing Moran v. Burbine, 475 U.S. 412, 431, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986); Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996)). Courts have long recognized that "'knowledge of the comparative sentence exposure between standing trial and accepting a plea offer . . . [is] crucial to . . . [a] decision whether to plead guilty.'" Id. at 379-80 (citing United States v. Day, 969 F.2d 39, 44 (3d Cir. 1992)). Thus, trial counsel's failure to inform Petitioner is "substandard" representation, id., that falls below the "objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 688; see also Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) (citing Cullen v. United States, 194 F.3d 401, 404 (3d Cir. 1999) (holding that "counsel must communicate to the defendant the terms of the plea offer")).

        While counsel's alleged error may have been unprofessional, the record does not indicate, as Petitioner claims, that "but for" counsel's error, there is a "reasonable probability that . . . the result of the proceeding would have been different." Id. at 694. Petitioner's only evidence showing that "but for" counsel's error, Petitioner would not have pled guilty is

35

Petitioner's affidavit; however this statement alone is insufficient.

In <u>Gordon</u>, the Second Circuit held that <u>Strickland's</u> "but for" test requires "some further 'objective evidence'" beyond a petitioner's statement. <u>Gordon</u>, 156 F.3d at 380-81 (<u>quoting</u> <u>Johnson v. Duckworth</u>, 793 F.2d 898, 902 (7th Cir. 1986)). Petitioner shows no such objective evidence. As Respondent accurately notes, Petitioner's only evidence that he would not have pled guilty had his counsel not erred is "his own self-serving affidavit." (Resp'ts Mem. of Law 9.) Furthermore, the record contains a state court finding of fact that undermines Petitioner's claim that "but for" counsel's error, he would not have pled guilty:

> Although . . . [Petitioner] now claims that he would not have pleaded guilty had he been advised of post-release supervision prior to his plea, based on the facts and circumstances of this case, not only is the sincerity of such contention seriously questioned but in the opinion of the Court, his assertion has been conclusively refuted as a matter of law . . . the Court seriously doubts that . . . [Petitioner] would have been truly concerned about any period of post-release supervision.

(Mem. Den. Petr's Mot. to Vacate J., Resp'ts Ex. E.) This state court determination of fact is "entitled" to a "high measure of deference." <u>Marshall</u>, 459 U.S. at 432 (<u>quoting</u> <u>Sumner</u>, 455 U.S. at 591; <u>see</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus . . . a determination of a

factual issue made by a State court shall be presumed to be correct."). This Court cannot simply "disagree with the state court . . . it must conclude that the state court's finding lacked even fair support in the record." Marshall, 459 U.S. at 432.

The burden is on Petitioner to rebut by clear and convincing evidence the presumed correctness and overcome the high measure of deference given to the state court's finding of fact. See 42 U.S.C. § 2254(e)(1). Given that the state court has found, as a matter of fact, that Petitioner would still have pled guilty even if he had known of the PRS period, the "objective evidence" that Petitioner must bring forth pursuant to Gordon must be enough to rebut, by clear and convincing evidence, the state court's finding of fact. 156 F.3d at 380-1.

As the Court earlier held, Petitioner's statement claiming that he would not have pled guilty had his counsel informed him of the PRS period, without more, is insufficient to meet Gordon's "objective evidence" requirement. The statement is equally insufficient to rebut the state court's finding of fact. Thus, Petitioner does not meet the "but for" prong of the Strickland two-part test, and this ineffective assistance of trial counsel claim is DENIED. See Strickland, 466 U.S. at 694 (holding that a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

The arguments underlying Petitioner's claim of ineffective assistance of trial counsel fail to meet the two-prong <u>Strickland</u> test. Accordingly, Petitioner's ineffective assistance of trial counsel claim is DENIED.

> 2. <u>Petitioner was not Denied Effective Assistance of Appellate Counsel.</u>

Petitioner's claim that he was denied ineffective assistance of appellate counsel rests on appellate counsel's refusal to argue in Petitioner's direct appeal that trial counsel did not properly complete motion documents at the trial level. (<u>See</u> Pet. 24.) This claim is DENIED as the appellate assistance provided Petitioner was within the standards adopted by the Supreme Court in <u>Strickland</u>. <u>See</u> <u>Claudio v. Scully</u>, 982 F.2d at 803 (<u>citing</u> <u>Abdurrahman</u>, 897 F.2d at 74) (holding that the two-prong <u>Strickland</u> test is used to determine whether appellate counsel was effective).

Petitioner must first show that his appellate counsel's representation "fell below an objective standard of reasonableness . . . under prevailing professional norms." <u>Strickland</u>, 466 at 688, 694. Petitioner does not establish this.

As Petitioner correctly noted, the Supreme Court has held that an appellant does not have a constitutional right to force appointed appellate counsel to advance every non-frivolous claim. (Petr's Br. at 25); <u>See</u> <u>Barnes</u>, 463 U.S. at 752 (holding that no "other decision of this [Supreme] Court suggests . . . that the

indigent defendant has a constitutional right to compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present these points"). Petitioner fails to show a lack of professional judgment in appellate counsel's decision to not argue that trial counsel did not properly complete pre-trial motion documents. Without this, Petitioner cannot overcome the "strong presumption that [appellate] counsel's conduct fell within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. Thus, <u>Strickland's</u> first prong is not met.

Regardless of whether Petitioner meets the first-prong, he certainly fails to establish the second, "but for" prong. Petitioner only states that he asked appellate counsel to argue that trial counsel erred when improperly making pre-trial motions. The record indicates that appellate counsel did not include these requests. However, Petitioner's claim of ineffective assistance of appellate counsel does not show that "but for" appellate counsel's refusal, Petitioner's direct appeal would have had a different outcome.

Petitioner's mere statement that he requested his appellate counsel to include a claim on direct appeal is insufficient. Absent a strong showing that counsel's refusal lacked professional judgment <u>and</u> "but for" counsel's refusal the outcome of Petitioner's appeal would have been different,

Petitioner does not meet the Supreme Court's <u>Strickland</u> test. Accordingly, Petitioner's ineffective assistance of appellate counsel is DENIED.

<u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES each of Petitioner's claims and DISMISSES, in its entirety, his petition seeking habeas relief. The Clerk of the Court is directed to mark this matter CLOSED.


SO ORDERED.


<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          July <u> 24 </u>, 2009